1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                     CENTRAL DISTRICT OF CALIFORNIA

10

11   ALEXANDER C.,[1]                    Case No. 5:19-cv-02125-GJS

12            Plaintiff

13        v.                             **MEMORANDUM OPINION AND
                                         ORDER**
14   ANDREW M. SAUL, Commissioner
     of Social Security,[2]
15
              Defendant.
16

17

18              **I.    PROCEDURAL HISTORY**

19        Plaintiff Alexander C. ("Plaintiff") filed a complaint seeking review of the

20   decision of the Commissioner of Social Security denying his application for

21   Disability Insurance Benefits ("DIB").  The parties filed consents to proceed before

22   the undersigned United States Magistrate Judge [Dkts. 11 and 12] and briefs

23   addressing disputed issues in the case [Dkt. 18 ("Pl. Br."), Dkt. 19 ("Def. Br."), Dkt.

24   20 ("Pl. Reply")].  The matter is now ready for decision.  For the reasons discussed

25   _____

26   [1]      In the interest of privacy, this Order uses only the first name and the initial of
     the last name of the non-governmental party.
27
28   [2]      Andrew M. Saul, now Commissioner of the Social Security Administration, is
     substituted as defendant for Nancy A. Berryhill.  *See* Fed. R. Civ. P. 25(d).

below, the Court finds that this matter should be remanded for further proceedings.

## II.   ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff filed for DIB on August 17, 2016, alleging a period of disability beginning February 1, 2010.  [AR 17.]  After Plaintiff's original application was denied, Plaintiff appeared and testified at a hearing before Administrative Law Judge Thomas Businger.  [AR 40-65.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled.  *See* 20 C.F.R. §§ 416.920(b)-(g)(1).  [AR 17-34.]  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2010, the alleged onset date.  [AR 20.]  At step two, the ALJ found that Plaintiff suffered from the severe impairment of "status post spinal fusion."  [AR 20.]  The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  [AR 22.]

The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) except:

> He can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about two hours in an eight-hour workday; sit about six hours in an eight-hour workday; pushing and/or pulling is unlimited other than as shown for lifting and/or carrying; can frequently balance; can occasionally climb ladders, ropes, or scaffolds, climb ramps and stairs, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extreme cold; and cannot work around unprotected heights or dangerous moving machinery.

[AR 22.]  Applying this RFC, the ALJ found that Plaintiff could not return to his past relevant work as a plumber, but determined that based on his age (34 years old), high school education, and ability to communicate in English, he could perform representative occupations such as document preparer (Dictionary of Occupational

Titles ("DOT") 249.587-018), final assembler (DOT 713.682-018), and table worker (DOT 739.687-0182) and, thus, is not disabled.  [AR 33-34.]

### III.   GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards.  *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.  *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

### IV.   DISCUSSION

### 1.   The ALJ Failed to Provide Legally Sufficient Reasons for Rejecting Plaintiff's Credibility

In his first issue, Plaintiff contends the reasons the ALJ cited for discounting his credibility were not clear and convincing.  Specifically, Plaintiff argues that the ALJ offered only one reason for discounting his testimony: that the medical

3

evidence is inconsistent with his allegations of the severity of his impairments, which Plaintiff argues *cannot* be the sole reason for rejecting his complaints. [Pl. Br. at 7-10.]

### A.  Legal Standard

"Where, as here, an ALJ concludes that a claimant is not malingering, and that he has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015) (internal citation and quotations omitted). Even if "the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony," if he "also provided valid reasons that were supported by the record," the ALJ's error "is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina*, 674 F.3d at 1115 (internal citation and quotations omitted).

"The ALJ may consider many factors in weighing a claimant's credibility, including (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition." *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

### B.  Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that he had an accident where he fell off a roof in 2010; he now suffers from significant pain in his low back that travels down his legs. [AR 45, 47-48.] Following the accident, Plaintiff had several spinal fusion surgeries occurring in 2012 and 2014. [AR 45.] Surgery has not eliminated his impairments. Due to his continuing back pain, Plaintiff has difficulty

4

1   sitting and he spends most of the day lying down. [AR 45.]  He can sit for up to 45

2   minutes at one time, however he cannot stand for very long. [AR 50.]  He has

3   difficulty lifting a gallon of milk. [AR 56.]  He also uses a cane or a walker to get

4   around.  [AR 48.]

5   When asked about his daily medications, Plaintiff testified that he takes

6   Gabapentin for nerve pain; Flexeril, a muscle relaxer; Oxycodone, a narcotic

7   analgesic; and an anti-inflammatory.  [AR 49.]  These medications make him

8   drowsy.  [AR 49.]

9   When asked about his daily activities, Plaintiff testified that he lives with his

10  girlfriend and his three children ages 4, 8, and 14. [AR  54.]  Although he has young

11  children, Plaintiff testified that he is unable to provide any child care due to his back

12  pain. [AR 54.]  Plaintiff relies on his mother and girlfriend to care for his four-year

13  old.  [AR 54.]  Plaintiff testified that he tries to walk around the block twice per

14  week.  [AR 50.]  He watches about four hours of television per day, but generally he

15  does not participate in many daily activities.  [AR 55.]

16  **C.    Analysis**

17  In addressing the credibility of Plaintiff's subjective complaints, the ALJ

18  found:

19          the alleged intensity, persistence, and limiting effects of symptoms are
20          inconsistent with and are not substantiated by the objective medical
            evidence.  The objective medical evidence only partially supports the
21          claimant's allegations.  Further, the objective medical evidence is
            inconsistent with the alleged severity of the functional limitations
22          imposed by the claimant's impairments and suggests the claimant's
            symptoms and limitations were not severe as the claimant alleged.  The
23          positive objective clinical and diagnostic findings detailed below do not
24          support more restrictive functional limitations than those assessed
            herein.  [AR 23.]
25
26  Defendant argues that "in addition to the lack of consistency with the

27  objective medical evidence," the ALJ found that the credibility of Plaintiff's

28  subjective symptom testimony was undermined because "Plaintiff's overall

5

1    conservative treatment *after his surgeries* was inconsistent with his claim of

2    disabling symptoms."  [Def.'s Br. at 5-6]; [AR 26.]  Defendant thus argues that

3    viewing the ALJ's decision liberally, the ALJ provided two reasons for finding

4    Plaintiff less credible: (1) Plaintiff was prescribed conservative treatment and (2)

5    there was a lack of objective medical evidence to support his complaints.

6    **i.    Conservative Treatment**

7        There are several problems with Defendant's argument that the ALJ

8    discounted Plaintiff's credibility based on his conservative treatment "*after his*

9    *surgeries.*"  [Def.'s Br. at 6.]

10        First, Defendant's argument grossly mischaracterizes the ALJ's statements

11   regarding Plaintiff's course of treatment.  Contrary to Defendant's argument, the

12   ALJ never attributed Plaintiff's conservative treatment to his back surgeries

13   generally.  Rather, the ALJ specifically noted that Plaintiff received conservative

14   treatment after his first back surgery in 2012.  However, as the ALJ noted, following

15   Plaintiff's 2012 back surgery, Plaintiff underwent two revision surgeries on July 31,

16   2014 to repair his failed L5-S1 fusion, significant nerve compression from bony

17   hyperostosis at L5-S1, and to resection the distal tip of the coccyx.  [AR 28.]

18   Plaintiff's surgeon specifically noted that the reason for these revision surgeries was,

19   in part, because of the failure of Plaintiff's "conservative care." [AR 28, AR 822 "he

20   failed conservative care and is now here for permanent surgical fixation."]

21        The ALJ's specific statement regarding Plaintiff's conservative care was as

22   follows:

23       [O]n March 3, 2012, the claimant underwent the following surgical
24       procedures: posterior spinal fusion at L5-S1 with interarticular process
         and interfacet interspinal fusion; posterior spinal segmental pedicle
25       screw instrumentation bilaterally at L5-S1; left sided transforaminal
         lumbar interbody fusion at L5-S1 with interbody fusion at L5-S1; right-
26       sided laminotomy/foraminotomy and microdiscectomies at L5-S1 with
         neurolysis, nerve dissection, and decompression; left-sided
27

28

6

hemilaminectomies at L5-S1; and radical discectomies at L5-S1 with interbody fusion.

     …

The claimant presented for follow-up appointments from March 2012 to March 2013.  During this period, he exhibited some positive, objective physical findings related to the lumbar spine, such as tenderness, limited range of motion, and positive straight leg raising.  However, x-ray imagining showed the claimant's hardware, screws, and interbody grafts were in good position.  Further, by March 2013, he exhibited normal five over five motor strength and only mildly decreased sensation in the left L5 dermatomal distribution.  His assessment during this period included status post posterior lumbar interbody fusion and decompression at L4-5 and L5-S1, as well as lower extremity radiculopathy, left greater than right.  **Continued conservative treatmen**t with prescribed medication, post-operative physical therapy, home exercises, and increased activity were was [sic] **recommended throughout the abovementioned period**.  [AR 26, emphasis added.]

As seen above, while the ALJ did refer to some of Plaintiff's treatment as conservative, in context, the ALJ limited his statements to the time period between Plaintiff's first back surgery in 2012 and March 2013.  The ALJ did not direct his statements about Plaintiff's conservative care to Plaintiff's ongoing treatment that continued well beyond March 2013.  Evidence that Plaintiff was treated conservatively for a short period of time following his first of three spine surgeries does not provide clear, if any, evidence of Plaintiff's stability with conservative treatment.

Second, even if the Court were to interpret the ALJ's statement regarding Plaintiff's conservative treatment as a reason to discount Plaintiff's credibility, such a reason would be insufficient as Plaintiff's treatment throughout his alleged period of disability was far from conservative.  After his first spine surgery, Plaintiff received epidural pain injections on July 23, 2013, October 29, 2013, September 10, 2014, and April 16, 2015.  [AR 973, 1100 and 1238.]  In addition to these injections, Plaintiff continued to use prescription narcotic pain medications every day, several

times a day.  [AR 23, 800.]  Finally, as addressed above, Plaintiff has had at least three spinal surgeries since his disability onset date.

Courts have characterized injections as both conservative and not conservative.  Typically, in instances of limited or one-time injections, the courts have deemed the treatment conservative.  *See, e.g., Jones v. Comm'r*, 2014 WL 228590, at *7 (E. D. Cal. Jan. 21, 2014) (occasional use of epidural injections in conjunction with massages and anti-inflammatory medications could be considered conservative); *Veliz v. Colvin*, 2015 WL 1862924, at *8 (C.D. Cal. Apr. 23, 2015) (single steroid injection did not undermine ALJ's finding that plaintiff received conservative treatment); *Gonzales v. Colvin*, 2015 WL 685347, at *11 (C.D. Cal. Feb. 18, 2015) (treatment consisting of medication and a single steroid injection was conservative).  In contrast, other courts have deemed this treatment not conservative, in particular when a claimant was treated with other injections and narcotic pain medication.  *See, e.g., Yang v. Colvin*, 2015 WL 248056, at *6 (C.D. Cal. Jan. 20, 2015) (collecting cases finding spinal epidural injections are not conservative); *Christie v. Astrue*, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (refusing to characterize steroid, trigger point, and epidural injections as conservative).

Similarly, the Ninth Circuit and its district courts have viewed the use of narcotic pain medication as non-conservative treatment, particularly when in conjunction with other treatments that were also not conservative.  *See, e.g., Lapeirre–Gutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. 2010) (treatment consisting of "copious" amounts of narcotic pain medication, occipital nerve blocks, and trigger point injections was not conservative); *Soltero De Rodriguez v. Colvin*, 2015 WL 5545038, at *4 (C.D. Cal. Sept. 18, 2015); *Christie v. Astrue*, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (treatment with narcotics, steroid injections, trigger point injections, epidural injections, and cervical traction was not conservative).

8

1    Here, Plaintiff did not receive only a single injection.  Plaintiff testified that
2    he has received at least six pain injections since his accident, all of which only
3    provided temporary relief; he also takes prescription narcotic pain medication daily.
4    [See AR 46 (testimony about epidural injections, AR 56 (testimony that Plaintiff
5    takes 10 mg of Oxycodone three times a day).]  In addition to pain relief injections
6    and narcotic pain medications, Plaintiff underwent physical therapy, and several
7    spinal surgeries.  This cannot reasonably be characterized as "conservative"
8    treatment.  *See Harvey v. Colvin*, 2014 U.S. Dist. LEXIS 107607, at *28 (C.D. Cal.
9    Aug. 5, 2014)(finding that ALJ erred in discounting credibility based on
10   "conservative" treatment where treatment included injections); *Yang v. Barnhart*,
11   2006 U.S. Dist. LEXIS 90358, at *12-14 (C.D. Cal. Dec. 12, 2006) (concluding that
12   physical therapy, neck surgery, prescription medication, and epidural injections
13   were not "conservative" treatment sufficient to discount claimant's credibility).

14   Accordingly, taken all together, any finding by the ALJ that Plaintiff received
15   conservative treatment was not supported by substantial evidence.  If the ALJ
16   intended this as a reason to discount Plaintiff's credibility, it was not clear and
17   convincing.

18           **ii.    Inconsistency with the Objective Medical Evidence**

19   The only other reason provided by the ALJ to discount Plaintiff's credibility
20   was that the objective medical evidence was inconsistent with Plaintiff's testimony
21   regarding his limitations.  [AR 23.]  It is well-established that an "ALJ may not
22   discredit a claimant's subjective testimony on" the sole basis that "no objective
23   medical evidence" supports the claimant's testimony as to "the severity of the
24   subjective symptoms from which he suffers."  *Light v. Comm'r of Soc. Sec. Admin.*,
25   119 F.3d 789, 792 (9th Cir. 1997).  Indeed, "it is the very nature of excess pain to be
26   out of proportion to the medical evidence," and thus, a finding that a claimant is not
27   credible because his pain testimony is out of proportion to the medical evidence is
28   an "inadequate reason."  *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).

While the lack of medical evidence to support a claimant's allegations of disabling pain and symptoms "is a factor that the ALJ can consider in his credibility analysis," it "cannot form the sole basis for discounting pain testimony." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Thus, this reason, on its own, is inadequate to support the ALJ's adverse credibility determination, because the asserted failure of the medical record to corroborate Plaintiff's subjective symptom and pain testimony fully is not, by itself, a legally sufficient basis for rejecting such testimony. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). The ALJ may not make a negative credibility finding "solely because" the claimant's symptom/pain testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Comm'r of Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *Light*, 119 F.3d at 792 ("a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain"); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) ("an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of the [symptoms].").  The ALJ's only other reason, therefore, is not clear and convincing and cannot save the ALJ's adverse credibility determination.  As there is no basis for finding this error to be harmless, reversal is required.

## 2.    Other Issues

Finally, Plaintiff contends that the ALJ's decision is additionally erroneous because the ALJ failed to give proper weight to the opinion of the agreed medical examiner involved with his worker's compensation claim.  [Pl.'s Br. at 10-15.]  In light of the Court's conclusion that the case be remanded, it does not address the final issue raised by Plaintiff, except to note that this issue would not warrant a remand for benefits.  However, given the errors in the ALJ's opinion, the ALJ should address Plaintiff's additional contention of error on remand.

1

**V.   CONCLUSION**

2       The decision of whether to remand for further proceedings or order an

3 immediate award of benefits is within the district court's discretion.  *Harman v.*

4 *Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  When no useful purpose would be

5 served by further administrative proceedings, or where the record has been fully

6 developed, it is appropriate to exercise this discretion to direct an immediate award

7 of benefits.  *Id.* at 1179 ("the decision of whether to remand for further proceedings

8 turns upon the likely utility of such proceedings").  But when there are outstanding

9 issues that must be resolved before a determination of disability can be made, and it

10 is not clear from the record the ALJ would be required to find the claimant disabled

11 if all the evidence were properly evaluated, remand is appropriate.  *Id.*  A remand

12 for an immediate award of benefits is appropriate "only in rare circumstances."

13 *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (internal citation

14 omitted).

15       The Court finds that remand is appropriate because the circumstances of this

16 case do not preclude the possibility that further administrative review could remedy

17 the ALJ's errors.  On remand, the Commissioner must re-evaluate Plaintiff's

18 pain/subjective symptom assertions and testimony properly, which in turn may lead

19 to the formulation of a new RFC and the need for additional vocational expert

20 testimony.  The Court therefore declines to exercise its discretion to remand for an

21 immediate award of benefits.  *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (upon

22 reversal of an administrative determination, the proper course is remand for

23 additional agency investigation or explanation, "except in rare circumstances");

24 *Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court

25 concludes that further administrative proceedings would serve no useful purpose, it

26 may not remand with a direction to provide benefits.").

27       For all of the foregoing reasons, **IT IS ORDERED** that:

28       (1) the Decision of the Commissioner is REVERSED and this matter

11

1    REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further

2    administrative proceedings consistent with this Memorandum Opinion and

3    Order; and

4    (2)  Judgment be entered in favor of Plaintiff.

5

6    **IT IS SO ORDERED.**

7

8    DATED: October 28, 2020    _____

9    GAIL J. STANDISH
     UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28